```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
RONNIE COLE,                        :
                                    :
                 Plaintiff,         :
                                    :   07 Cv. 11096 (BSJ)
          v.                        :
                                    :   OPINION AND ORDER
THE NEW YORK STATE DEPARTMENT       :
OF CORRECTIONAL SERVICES            :
COMMISSIONER BRIAN FISCHER,         :
SUPERINTENDENT ROBERT ERCOLE,       :
LIEUTENANT KEVIN LaPORTO,           :
SERGEANT P. TROWBRIDGE,             :
CORRECTION OFFICER G. LEHOYSKI,     :
CORRECTION OFFICER JOHN D.          :
HALICKI, AND DIRECTOR DONALD        :
SELSKY, INDIVIDUALLY AND IN         :
THEIR OFFICIAL CAPACITIES,          :
AND THE "NEW YORK STATE             :
DEPARTMENT OF CORRECTIONAL          :
SERVICES ETC., AL.,"                :
                                    :
                 Defendants.        :
------------------------------------x
```

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Plaintiff Ronnie Cole ("Cole") brings this pro se action, pursuant to 42 U.S.C. § 1983, against defendants The New York State Department of Correctional Services ("DOCS") Commissioner Brian Fischer ("Commissioner Fischer"), Superintendent Robert Ercole ("Superintendent Ercole"), Lieutenant Kevin LaPorto ("Lieutenant LaPorto"), Sergeant P. Trowbridge ("Sergeant Trowbridge"), Correction Officers G. Lehoyski ("Correction Officer Lehoyski") and John D. Halicki ("Correction Officer Halicki"), Director Donald Selsky ("Director Selsky"), and the "New York State Department of Correctional Services etc., al." (collectively, "Defendants"), alleging multiple violations of his constitutional rights. Cole

seeks injunctive relief, along with compensatory and punitive damages against Defendants in their official and individual capacities. On December 7, 2007, Cole filed an Amended Complaint, and on February 4, 2009, Cole requested leave to file a Second Amended Complaint. By Order dated March 20, 2009, Magistrate Judge Kevin Nathaniel Fox denied Cole's request. Cole filed an Objection to Magistrate Fox's Order. By Memorandum Order dated May 29, 2009, the Court again denied Cole's request for leave to file a Second Amended Complaint. Currently before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

This action arises out of events that occurred in November 2005. At that time, Cole was incarcerated at the Green Haven Correctional Facility ("GHCF"), a maximum security prison in Stormville, New York. On November 9, 2005, Sergeant Trowbridge authorized Correction Officer Lehoyski to conduct a strip frisk of Cole based on confidential information. (See Compl., Ex. 27.) Accordingly, Correction Officer Lehoyski ordered Cole to "undress from head to waist." (Id. ¶ 13.) Cole complied with this order. Correction Officer Lehoyski asked Cole if he "kn[e]w what this [wa]s about," but Cole did not respond. (Id.) Cole alleges that Correction Officer Lehoyski then said, "I will show you how we do

2

things at [GHCF] [n]igger," and that he "became [p]hysically abusive hitting [Cole] in the face and stat[]ing nigger I will kill you, I hate Muslim[s] . . . ." (Id. ¶¶ 13-14.)

Cole was then escorted to the emergency room of the GHCF hospital where he was ordered to "strip [from] the waist down." (Id. ¶ 15.) Cole alleges that Correction Officer Lehoyski "made joke[s] . . . about [Cole] wearing an adult . . . [d]iap[]er."[1] (Id. ¶ 16.) Correction Officer Lehoyski then conducted a strip frisk of Cole, uncovering several zip-locked bags containing substances that tested positive for cocaine and marijuana. (See id., Exs. 1, 3, 4, 25, 27.)

Later that evening, Cole was taken to the Special Housing Unit ("SHU"), where he remained for approximately one hour. (See id. ¶ 18, Ex. 2.) Cole alleges that, while in SHU, his wheelchair, leg braces, hearing aid, walking cane, and back brace were taken away. (See id. ¶ 19.) In addition, Cole was not given a clean adult diaper, despite his need for one. (See id.) While in SHU, Cole refused a direct order from Correction Officer T. Powers to stop pulling on his catheter and hitting his head on a writing bench in his cell. (See id., Ex. 5.) Two days later, Cole refused a direct order from Correction Officer Halicki to submit a urine sample for routine uranalysis testing. (See id., Ex. 7.) On November 19, 2005, Cole learned of three Tier III misbehavior reports written

---

[1] Cole suffers from chronic urinary tract infections, which require him to wear adult diapers. See Compl. Ex. 12.

3

against him for: (1) possessing and smuggling drugs, written by Correction Officer Lehoyski; (2) creating a disturbance and refusing to comply with a direct order, written by Correction Officer T. Powers; and (3) refusing to comply with a direct order, written by Correction Officer Halicki.  On February 13, 2008, Cole pled guilty to attempted promotion of prison contraband and admitted that he knowingly possessed cocaine on November 9, 2005. (See Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, Appx. at 13-15.)  Nevertheless, Cole alleges that all of these reports were false.  (See Compl. ¶¶ 20-22.)

In addition, Cole argues that prison rules and regulations were disregarded by: (1) Sergeant Trowbridge, as he failed to endorse the "Report of Strip Frisk or Strip Search in direct[] violation of Departmental Directive 4910"; (2) Correction Officer Halicki, as he failed to comply with "Policy & Procedures Per Directive 4937 Urinalysis Testing section IV"; and (3) Lieutenant LaPorto, who presided at Cole's disciplinary hearing and violated the "[D]epartment of Correctional Services Employee Rules and Conduct Manu[a]l[]" by considering false testimony proffered by corrections officers.  (See id. ¶¶ 22, 24, 26.)

After conducting a full disciplinary hearing, Lieutenant LaPorto found Cole guilty of the conduct alleged in the misbehavior reports and sentenced him to a term of eighteen months' confinement in SHU and thirty-six months of lost privileges.  (See id. ¶ 25,

Exs. 14, 15.)  On December 18, 2005, Cole appealed this determination to Director Selsky, who reduced Cole's sentence to twelve months' confinement in SHU and twelve months of lost privileges.  (See id. ¶ 29, Exs. 19, 20.)

Cole commenced two Article 78 proceedings in New York State Supreme Court to again challenge the determinations made following his Tier III disciplinary hearing.  (See id. ¶ 32.)  In the first proceeding, Cole challenged the strip frisk performed by Correction Officer Lehoyski on the grounds that, although he had probable cause to conduct the search, Correction Officer Lehoyski did not have a signed authorization to do so.  The New York State Supreme Court dismissed Cole's petition, finding that sufficient paperwork existed to establish that Sergeant Trowbridge authorized the strip frisk based on confidential information and that the omission of his signature on the actual strip frisk authorization form was a "technical" and harmless defect.  Cole appealed the dismissal of his Article 78 petition, but his appeal was denied.  See Mtr. of Cole v. Goord, 47 A.D.3d 1147, 850 N.Y.S.2d 687 (App. Div. 3d Dep't 2008).

In the second proceeding, Cole challenged his urinalysis testing violation.  The New York State Supreme Court dismissed Cole's petition, finding that Cole's refusal to submit a urine sample constituted a violation of the disciplinary rules and that Correction Officer Halicki properly issued a misbehavior report for

Cole's violation. Cole appealed the dismissal of his Article 78 petition, but his appeal was denied. See Mtr. of Cole v. Goord, 47 A.D.3d 1148, 850 N.Y.S.2d 283 (App. Div. 3d Dep't 2008). This litigation ensued.

**DISCUSSION**

Pursuant to Section 1983, Cole asserts that Defendants: (1) discriminated against him, based upon his race, religious beliefs, and disability; (2) filed false misbehavior reports against him and failed to follow prison rules and regulations; (3) used excessive force; and (4) were deliberately indifferent to his medical needs, in violation of the First, Eighth, and Fourteenth Amendments to the United States Constitution. The Court addresses each of these claims in turn.

I.  **Standard of Review**

To withstand a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the adequacy of a complaint, courts use "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). Since Cole is a prisoner proceeding pro se, the Court liberally construes his

pleadings "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, a pro se plaintiff is not entirely relieved of the normal pleading requirements, and a claim predicated on "conclusory allegations or legal conclusions masquerading as factual conclusions" will not survive a motion to dismiss. Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000).

**II. Dismissal of Cole's Claims Against Defendants in their Official Capacities**

In the Amended Complaint, Cole seeks recovery of damages in substantial amounts against Defendants, whom he sues both as individuals and in their official capacities as DOCS employees. Defendants contend that any recovery against them for damages as DOCS employees is precluded by virtue of the Eleventh Amendment.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state. See Alabama v. Pugh, 438 U.S. 781 (1978). This absolute immunity extends to both state agencies and state officials sued for damages in their official capacities, when the essence of the claim involved is one against a state as the real party in interest. See Richards v. State of New York App. Div., Second Dep't, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing Cory v. White, 457 U.S. 85 (1982)). DOCS, as a state agency, enjoys Eleventh Amendment immunity from suit in federal court. See Guarneri v. West, 518 F. Supp. 2d 514, 519 (W.D.N.Y.

2007). "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).

Courts have, however, recognized three exceptions to the Eleventh Amendment bar where: (1) the state has consented to suit; (2) the circumstances first recognized in Ex parte Young, 209 U.S. 123 (1908), apply; or (3) Congress has abrogated the state's immunity. See S&M Brands, Inc. v. Cooper, Nos. 06 Civ. 5828, 06 Civ. 5829, 2008 U.S. App. LEXIS 10251, at *4 (6th Cir. May 13, 2008). Here, the first and the third exceptions are not even arguably implicated. The second exception first recognized in Ex parte Young allows prospective injunctive and declaratory relief compelling a state official to comply with federal law, see Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 & n. 10 (1989), regardless of whether compliance might have an ancillary effect on the state treasury, Edelman v. Jordan, 415 U.S. 651, 667-68 (1974). "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n. 14 (1983)(citing Ex parte Young, 209 U.S. at 160-62). Because Cole cannot establish the violation of a federal law, the Ex parte Young exception cannot save his claim for injunctive relief. Accordingly, Defendants' motion to dismiss is granted as to all

claims for damages against DOCS as well as the individual Defendants in their official capacities.

### III. Dismissal of Cole's Claims Against Commissioner Fischer and Superintendent Ercole in Their Individual Capacities

A claim for money damages under Section 1983 may not lie against defendants who were not personally involved in the constitutional violation. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); see also Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987). Commissioner Fischer and Superintendent Ercole both held supervisory positions within DOCS, and supervisors cannot be held liable under Section 1983 solely for the acts of their subordinates. See Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985). The personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon, 58 F.3d at 873 (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).

The Amended Complaint does not contain any specific allegations against Commissioner Fischer. Cole's claims against Commissioner Fischer are based solely on his position as

9

Commissioner of DOCS in November 2005. Accordingly, Cole's claims against Commissioner Fischer must be dismissed.

In the Amended Complaint, Cole contends that he filed grievances and letters with Superintendent Ercole-in effect, that he informed Superintendent Ercole of a purported constitutional violation-and that Superintendent Ercole failed to respond. More specifically, Cole claims that Superintendent Ercole failed to respond to these grievances and letters in order to retaliate against Cole for filing a complaint against employees of the correctional facility where Superintendent Ercole was formerly employed. Aside from these allegations, Cole does not allege any specific misconduct by Superintendent Ercole. These allegations are insufficient to state a claim against Superintendent Ercole because they are based on pure speculation and, for the reasons explained in the following section, the underlying conduct that Cole complained of was not a constitutional violation. Thus, Cole's claims against Superintendent Ercole must be dismissed as well.

## IV. Cole's Section 1983 Claims Against the Remaining Defendants in Their Individual Capacities

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "that state officials, acting under color of state law, deprived [him] of a right guaranteed [to him] by the Constitution or laws of the United States. Moreover, defendants' actions at that time must have been objectively unreasonable in light of

10

clearly established federal law; otherwise, those actors are entitled to qualified immunity." Rodriguez v. Phillips, 66 F.3d 470, 473 (2d Cir. 1995). For the reasons explained below, the Amended Complaint, construed liberally to raise the strongest arguments it suggests, fails to state a claim under Section 1983. Thus, the Court need not address qualified immunity.

### A. Discrimination Based upon Race, Religion, and Disability

Cole alleges that Defendants discriminated against him based upon his race, religious beliefs, and disability, in violation of the Fourteenth Amendment to the United States Constitution. The only allegations in the Amended Complaint that relate to this claim are that Correction Officer Lehoyski used a racial epithet, made a derogatory comment about Muslims, and mocked Cole for wearing an adult diaper. (Compl. ¶¶ 13-14, 16.)

Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under Section 1983. See Cotz v. Mastroeni, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007) (discussing case law involving a corrections officer harassing an inmate by, among other things, directing racial epithets at him and finding that such an action did not rise to the level of a constitutional violation); Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (stating that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute

11

the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotations omitted). Inappropriate as they may be, these instances of verbal harassment, standing alone, are insufficient as a matter of law to state a claim for relief under Section 1983. Therefore, this claim must be dismissed.

### B. Filing of False Misbehavior Reports and Failure to Follow Prison Rules and Regulations

Cole alleges that Defendants filed false misbehavior reports against him and failed to follow prison rules and regulations in violation of the First and Fourteenth Amendments to the United States Constitution. More specifically, Cole asserts that Defendants filed false misbehavior reports against him for: (1) possessing and smuggling drugs, written by Correction Officer Lehoyski; (2) creating a disturbance and refusing to comply with a direct order, written by Correction Officer T. Powers; and (3) refusing to comply with a direct order, written by Correction Officer Halicki. (Compl. ¶¶ 20-22.) Cole contends that prison rules and regulations were disregarded by: (1) Sergeant Trowbridge, as he failed to endorse the "Report of Strip Frisk or Strip Search in direct[] violation of Departmental Directive 4910"; (2) Correction Officer Halicki, as he failed to comply with "Policy & Procedures Per Directive 4937 Urinalysis Testing section IV"; and (3) Lieutenant LaPorto, who presided at Cole's disciplinary hearing and violated the "[D]epartment of Correctional Services Employee

Rules and Conduct Manu[a]l[]" by considering false testimony proffered by corrections officers.  (Compl. ¶¶ 22, 24, 26.)

To the extent that Cole challenges the strip frisk authorized by Sergeant Trowbridge and the urinalysis testing procedures followed by Correction Officer Halicki, Cole raised these claims in his Article 78 proceedings; they were denied, and those denials were affirmed by the Appellate Division.  See Mtr. of Cole, 47 A.D.3d at 1147, 850 N.Y.S.2d at 687; Mtr. of Cole, 47 A.D.3d at 1148, 850 N.Y.S.2d at 283.

"Under the Rooker-Feldman doctrine, inferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations.[2]"  Vargas v. City of New York, 377 F.3d 200, 205 (2d Cir. 2004).  "[I]nextricably intertwined means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding . . . , subsequent litigation will be barred under the Rooker-Feldman doctrine if it would be barred under principles of preclusion."  Id. (quotations omitted).

"Under New York law, issue preclusion occurs if '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted

---

[2]  The Rooker-Feldman doctrine takes its name from two Supreme Court cases – Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

had a full and fair opportunity to litigate the issue in the first proceeding.'"  Id. at 205-06 (quoting Colon, 58 F.3d at 869).  Applying this standard to the present case, Cole presented his challenges to the strip frisk authorized by Sergeant Trowbridge and the urinalysis testing procedures followed by Correction Officer Halicki in state court, via his Article 78 petitions, and he unsuccessfully appealed the denials of those petitions to the New York Appellate Division.  The Court finds that these issues were "actually and necessarily decided" through the review conducted in the state courts and that, based on the facts of this case, Cole had a "full and fair opportunity to litigate the issue[s]."  Id.  Thus, this Court lacks jurisdiction to reconsider them.

With respect to Cole's remaining allegations, the filing of false misbehavior reports and the consideration of false testimony do not establish a per se constitutional violation.  See Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997); Freeman v. Rideout, 808 F.2d 949, 952 (2d Cir. 1986).  There is simply "no general constitutional right to be free from" false accusations.  Boddie, 105 F.3d at 862.  To violate a plaintiff's constitutional rights "[t]here must be more, such as retaliation against the prisoner for exercising a constitutional right."  Id.

Cole's allegations against Defendants are insufficient to state a claim under Section 1983.  Although Cole alleges that the misbehavior reports filed against him were false, Cole does not

14

suggest anything "more" so as to implicate the violation of a constitutional right. Cole does not allege in his Amended Complaint, for instance, that Defendants issued the misbehavior reports to retaliate against him.

In addition, it is abundantly clear that Cole was afforded adequate procedural due process. In sum, prisoners must be afforded: (1) advanced written notice of the charges against them at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement as to the evidence relied upon and the reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974); see also Freeman, 808 F.2d at 953; 7 N.Y.C.R.R. § 541.17(g).

In this case, Cole was given written notice of the charges against him at least four days before his hearing began, (see Compl. ¶ 20), an opportunity to be heard, to present witnesses, and to present rebuttal evidence at the hearing, (see id., Exs. 3, 4), and a written statement of the dispositions and the reasons underlying them, (see id., Exs. 14, 15.) As the due process standard was met in this case, Cole challenges his disciplinary hearing on the grounds that he was deprived of the opportunity to have his disciplinary charges reviewed by a neutral arbitrator. However, Cole alleges no facts in support of his claim that Lieutenant LaPorto was biased in any way or that such bias deprived

Cole of a full and fair opportunity to litigate his claim. Such a bald assertion is insufficient to state a claim under Section 1983. See Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987) (stating that "broad, simple, and conclusory statements are insufficient to state a claim under § 1983") (citations omitted).

Therefore, the Amended Complaint fails to allege that Defendants infringed Cole's procedural due process rights. Because Cole's claims that Defendants filed false misbehavior reports and considered false testimony at his disciplinary hearing, standing alone, are not a violation of any constitutional rights, these claims must be dismissed.

### C.  Excessive Use of Force

The Court construes an excessive use of force claim based upon Cole's allegation that Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The only allegation in the Amended Complaint that appears to support Cole's excessive use of force claim is that Correction Officer Lehoyski "hit[] plaintiff in the face . . . ." (Compl. ¶ 14.)

Under the Eighth Amendment, which applies to states through the due process clause of the Fourteenth Amendment, prison officials must "take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer, 511 U.S. at 832).

16

In order to establish an excessive use of force claim, a plaintiff must show that: (1) objectively, the conditions of his incarceration posed a substantial risk of serious harm; and (2) subjectively, defendants acted with a "sufficiently culpable state of mind" associated with the "unnecessary and wanton infliction of pain." Farmer, 511 U.S. at 834; see also Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). Whether conduct is "wanton" depends on "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quotations and citation omitted).

Reading the Amended Complaint liberally and drawing all inferences in favor of Cole, the Court finds that Cole's allegation that Correction Officer Lehoyski hit him in the face does not amount to excessive use of force. As the Supreme Court has noted, "a de minimis use of force will rarely suffice to state a constitutional claim," Romano, 998 F.2d at 105 (citing Hudson, 503 U.S. at 9-10), and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Any force used against Cole was certainly minimal and did not pose a substantial risk of serious harm. In fact, Cole does not allege that he suffered any injuries as a result. See Jennings v. Ciciarelli, No. 02 Civ. 1405

17

(LEK), 2008 U.S. Dist. LEXIS 58663, at *5 (N.D.N.Y. July 30, 2008) ("If an excessive force claim did not require any showing of harm, this would effectively eliminate the objective element from Eighth Amendment claims brought under this theory."). Moreover, Cole's allegations do not suggest that this minimal use of force was applied maliciously or sadistically to cause harm, or that such use of force was anything other than a good-faith effort to maintain discipline, order, and security in the facility. See 7 N.Y.C.R.R. § 251-1.2 (permitting officers to use force to enforce compliance with a lawful direction or to quell a disturbance). Because Cole fails to demonstrate that the force used against him was sufficiently serious to rise to the level of an Eighth Amendment excessive use of force claim, this claim must be dismissed as well.

### D. Deliberate Indifference to Medical Needs

Reading the Amended Complaint liberally, Cole's allegations could be construed to assert a violation of his Eighth Amendment right to be free from cruel and unusual punishment as a result of Defendants' deliberate indifference to his serious medical needs. Cole alleges that during the hour that he was at the SHU, his wheelchair, leg braces, hearing aid, walking cane, and back brace were taken away. In addition, Cole alleges that he was not given a clean adult diaper, despite his need for one. These allegations, however, are not sufficiently serious to rise to the level of a constitutional violation.

To establish an unconstitutional denial of medical care, an inmate must prove that prison officials acted with "deliberate indifference to [his] serious medical needs." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). First, the alleged deprivation of care must be, objectively, "sufficiently serious." Id. This requirement contemplates "a condition of urgency that may result in degeneration or extreme pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quotations and citations omitted). Second, the plaintiff must "prove that the charged official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Farmer, 511 U.S. at 837). "Mere negligence" does not constitute deliberate indifference. Farmer, 511 U.S. at 835. Significantly, because Cole complains about a "temporary delay in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." Smith, 316 F.3d at 185 (quotations and citation omitted).

Cole undoubtably suffers from a serious medical condition – chronic urinary tract infections. The Amended Complaint, however, fails to allege that any short-term limitation on his medical

supplies or therapeutic devices created an excessive risk to his health or safety. Cole does not allege that he suffered any adverse consequences or that his medical condition deteriorated in any way as a result. Moreover, Cole does not allege that Defendants knew of and deliberately disregarded such risk or refused the treatment he required. Therefore, Cole's claims are insufficient to implicate the Eighth Amendment, and this claim must be dismissed.

In sum, the Amended Complaint, construed liberally to raise the strongest arguments it suggests, fails to state a claim that Defendants deprived Cole of any constitutional rights. Therefore, the Amended Complaint fails to state a claim under 42 U.S.C. § 1983 and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the Amended Complaint. The Clerk of Court is instructed to close this case.

SO ORDERED:

_____
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         May 29, 2009